# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILIANO LOPEZ, | ) 1:11cv02075 LJO DLB PC ) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS ) REGARDING DISMISSAL OF ACTION |
| vs. | ) ) THIRTY-DAY DEADLINE |
| R. L. ATHEY, et al., | ) ) |
| Defendants. | ) |

Plaintiff Emiliano Lopez ("Plaintiff") is state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on December 16, 2011. On February 1, 2013, the Court dismissed the complaint with leave to amend. Plaintiff filed his First Amended Complaint ("FAC") on April 15, 2013. He names Sergeant R. L. Athey, Captian Adrian Pineda, Warden James A. Yates, Vice Principal Cheryl Lopez, Law Library Technician Assistant Isaac Ramirez, and CDCR Secretary Matthew Cate as Defendants.

A.   **LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

1

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

B.      **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Avenal State Prison. The events occurred while Plaintiff was housed at Pleasant Valley State Prison ("PVSP").

Plaintiff alleges that on February 23, 2010, the Hispanic population at PVSP was placed on lockdown. As a result of Plaintiff's ethnicity, he was part of the population placed on lockdown. During the lockdown, Plaintiff submitted two inmate requests forms seeking access to the law library. The requests were not answered.

On April 5, 2010, Plaintiff submitted an administrative appeal to Defendant Ramirez. Defendant Ramirez responded the same day, explaining that he was advised by Defendant Athey that Plaintiff could only make copies. He could not have computer access. Plaintiff filed an appeal to the First Level that day.

During the lockdown, the law library facilitated copies and brought legal cases to Plaintiff's cell.

On April 20, 2010, the lockdown was lifted and Plaintiff was able to work on his petition for writ of habeas corpus for the Kern County Superior Court and Los Angeles County Superior Court.

The Facility B law library removed all legal books. Instead, six computers provided research tools in electronic format, making physical access to the law library essential.

On June 9, 2010, Plaintiff was placed on another lockdown. He again requested access to the law library, but his request was ignored. Plaintiff contends that California Code of Regulations, Title 15, section 3123(d) requires physical law library access for inmates who are limited to law library paging (i.e., having legal research brought directly to a cell) due to a mandatory lockdown or modified program.

Plaintiff filed for Priority Legal User ("PLU") status for a denial of writ of habeas corpus in the California Court of Appeals. Plaintiff contends that access to the law library was essential

to research the procedures, potential question and time constraints applicable to the California Supreme Court and federal court. As a result of not being able to access the law library for computer research, Plaintiff missed an opportunity to petition the California Supreme Court. He requested an extension of time to file his petition, but the court denied his request.

On June 30, 2010, Defendant Lopez interviewed Plaintiff regarding his appeal. The appeal was partially granted and Plaintiff was allowed physical access to the law library. However, the decision was not respected and Plaintiff was not allowed to conduct legal research using the tools provided to present his argument for post-conviction relief.

On July 23, 2010, Plaintiff was scheduled to access the law library. Instead, he was escorted to the Program Office and was locked into a small holding cage. Defendant Ramirez gave him a California Criminal Law Practice and Procedure book. Plaintiff spent two hours locked in the cage, which was smaller than a phone booth, unable to move, sit, write or do any productive legal research. Afterwards, he suffered significant pain all over his body that lasted for a couple of weeks.

On July 29, 2010, Plaintiff's habeas petition was denied in the Los Angeles Superior Court. Plaintiff submitted a petition to the Second Appellant District. The petition was denied and Plaintiff was advised to file his petition with the Appellate District for the Superior Court. As a result of PVSP's failure to allow Plaintiff to access the law library, Plaintiff kept filing in the wrong court.

On August 13, 2010, Plaintiff was scheduled for law library access but was again locked into the small cage for two hours. Plaintiff was allowed to use California Criminal Law Practice and Procedure, while other inmates used all the legal research tools available. Plaintiff again felt pain from being in the small cage.

Plaintiff filed an appeal relating to the decision to have him locked in a cage for library time. Defendant Lopez responded at the informal level, stating that Plaintiff's appeal was

granted and that it was up to custody to escort him to the library during lockdown. Therefore, Plaintiff's appeal should have been directed to custody.

On September 20, 2010, Plaintiff submitted an administrative appeal directed to Defendant Pineda, the facility captain, requesting meaningful access to the law library. The appeal was granted on November 5, 2010. By this time, however, Plaintiff was off lockdown and able to access the law library.

Plaintiff eventually learned where the Appellate Division of the Superior Court was located and filed his petition. On March 10, 2011, Plaintiff received a "scathing, eleven page denial with prejudice for abusing the writ." FAC 9. Plaintiff filed his petition in the California Supreme Court, and it was denied on November 16, 2011.

Plaintiff alleges that as a result of Defendants' actions, he was denied access to the courts. He contends that he was singled out for "being the racial group lockdown," and this treatment discouraged him from requesting law library access.

Plaintiff alleges that Defendant Pineda was responsible for placing the Hispanic population on lockdown and modifying the program. He alleges that Defendant Pineda and Defendant Athey failed to follow the regulations requiring that Plaintiff be allowed law library access during a lockdown.

Plaintiff alleges that Defendant Yates denied his appeal at the Second Level, and is responsible for the institutional program operations.

Plaintiff contends that Defendants Cate and Yates are directly and indirectly linked to his claims because their policies "set in motion" the series of acts. He alleges that they also "knowingly refused to terminate a series of acts by others," which they knew, or should have known, would cause harm.

C. **ANALYSIS**

    1. *Defendants Cate and Yates*

Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue. Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1948-49; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235, and administrators and/or supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Some culpable action or inaction must be attributable to Defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy, as alleged here, may support a claim, the policy must have been the moving force behind the violation. Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

In the Court's first screening order, the Court explained that although Plaintiff included Defendants Cate and Pineda in his statement of claims, such legal conclusions were insufficient under both Iqbal and Rule 8. The Court further explained that without factual allegations to link either Defendant Cate or Pineda to any constitutional violation, Plaintiff failed to state a claim against them.

In his FAC, Plaintiff has alleged facts relating to Defendant Pineda, which will be discussed below. He fails, however, to state sufficient factual allegations against either

Defendants Cate or Yates. Plaintiff again asserts only a legal conclusion against Defendant Cate by alleging that he is linked to his claims because his policies "set in motion" the series of actions" and that they refused to "terminate a series of acts by others." While policies may form the basis of supervisory liability, Plaintiff's allegations are factually insufficient to link Defendant Cate to any alleged violation. The same allegations made against Defendant Yates are also insufficient.

Plaintiff also alleges that Defendant Yates denied his appeal at the Second Level, but he fails to specifically link Defendant Yates to either of the two appeals that he discusses in the FAC. Moreover, denying a prisoner's administrative appeal does not generally cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983. That circumstance has not been presented here.

Accordingly, Plaintiff fails to state a claim against either Defendant Yates or Cate.

2.  *Access to Law Library and Courts*

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir.2011); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir.2009). "Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances." Silva, 658 F.3d at 1101–02.

The right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S.

817, 828 (1977); see also Madrid v. Gomez, 190 F.3d 990, 995 (9th Cir.1999). The right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts .... [It is this capability] rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. Lewis, 518 U.S. at 356–57. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. at 351.

An inmate also has a right to litigate without interference in pursuit of legal redress for claims that have a reasonable basis in law or facts. Silva, 658 F.3d at 1103.

To establish a violation of the right of access to the court, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. See Lewis, 518 U.S. at 349 (1996). Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412–415 (2002). The plaintiff must show (1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; (2) the official acts frustrating the litigation; and, in the case of a backward-looking claim, (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Id. at 414–15.

Here, Plaintiff alleges a denial of access claim based on his inability to file a timely petition with the California Supreme Court and appellate division of the Los Angeles County Superior Court.

In the Court's prior screening order, the Court explained that despite his claims, Plaintiff was able to file numerous pleadings with various courts throughout the time period at issue. Although some of his petitions and requests were ultimately denied by the court, this did not

equate to a denial of access claim. Therefore, Plaintiff failed to allege an actual injury by demonstrating the loss of a 'nonfrivolous' or 'arguable' underlying claim.

In the FAC, Plaintiff does not allege facts to cure this deficiency. His allegations include all of the same facts that demonstrate that he was able to file numerous documents in various courts throughout the time period at issue. In or about April 2010, Plaintiff filed habeas petitions in the Kern County Superior Court and Los Angeles County Superior Court. The Kern County petition was eventually denied by the Fifth District Court of Appeal on June 23, 2010. Even though he was unsure of the requirements for filing a habeas petition in the California Supreme Court, Plaintiff was able to send the California Supreme Court a request for an extension to file his writ. The request was denied on July 26, 2010.

After Plaintiff's Los Angeles County Superior Court habeas petition was denied on July 29, 2010, Plaintiff was able to submit his habeas petition to the Second Appellate District. Despite an apparent misunderstanding as to where to file his next petition, he was able to submit his petition to the superior court a number of times. Plaintiff eventually determined where the appellate division of the Los Angeles Superior Court was located and was able to file his petition on March 10, 2011. Plaintiff was also able to file a habeas petition in the California Supreme Court, which was denied on November 16, 2011.

Plaintiff's filing history therefore demonstrates that he was able to file documents throughout the time period at issue. Although Plaintiff's habeas petitions were ultimately denied, he was able to file the petitions in the first instance. Similarly, although Plaintiff alleges that he was unsure of filing requirements, he was still able to communicate with the court and request an extension of time.

Plaintiff also fails to demonstrate any official acts that frustrated the litigation. During lockdown periods, Plaintiff was afforded access to the law library through a holding cell and

through delivery of cases of his cell. He admits that when he was not on lockdown, he was able to physically access the law library.

As new facts, Plaintiff emphasizes the importance of physical access to the law library during the lockdown. He explains that the Facility B law library replaced legal books with six computers, making physical access to the law library essential for legal research. He alleges that as a result of the denial of physical access, he missed an opportunity to petition the California Supreme Court, could not file for post-conviction relief and continued filing a petition in the wrong court. Plaintiff's facts undermine his contentions, however. As explained above, Plaintiff was able to continue filing petitions and requests for extensions of time. Although his requests were ultimately denied, his allegations do not support a denial of access claim. Moreover, insofar as Plaintiff attempts to allege a claim based on denial of access to the law library, there is no such free-standing claim absent evidence of an actual injury.

Plaintiff therefore fails to state a denial of access to the courts claim.

3.   *Defendants Involved in Appeal Review*

As noted above, denying a prisoner's administrative appeal does not generally cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983.

In his FAC, Plaintiff alleges that Defendant Ramirez, in answering Plaintiff's appeal, indicated that he was told by Defendant Athey that Plaintiff could only make copies. He further alleges that Defendant Lopez (1) granted his appeal regarding law library access during lockdown at the informal level but it was not "respected;" and (2) granted Plaintiff's appeal relating to being placed in the cage, but told Plaintiff that it was a custody issue.

Under these facts, neither Defendant Ramirez nor Defendant Lopez willfully ignored a constitutional violation. Indeed, absent the presentation of facts sufficient to show that a constitutional violation occurred in the first place, Plaintiff cannot pursue a claim against those who reviewed the administrative appeal.

Accordingly, Plaintiff fails to state a claim against either Defendant Ramirez or Lopez based on their involvement in the appeals process.

4. *Policies*

There is no supervisory liability under section 1983. Some culpable action or inaction must be attributable to Defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy, as alleged here, may support a claim, the policy must have been the moving force behind the violation. Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

Plaintiff contends that Defendants Yates, Cate, Pineda and Athey allowed policies that interfered with his right to access the courts. However, Plaintiff has failed to allege an underlying access to the courts claim, and he is therefore unable to allege supervisory liability based on an unconstitutional policy.

Insofar as Plaintiff alleges that Defendants Pineda and Defendant Athey failed to follow the regulations requiring that he be allowed law library access during a lockdown, his claim fails. First, the regulation that Plaintiff cites, Title 15, section 3123(d) of the California Code of Regulations, does not provide for physical access during a lockdown without exception. Second, and more importantly, the Court is unaware of any authority for the proposition that there exists a private right of action available to Plaintiff for violation of Title 15 regulations and there exist ample district court decisions holding to the contrary. E.g., Vasquez v. Tate, 2012 WL 6738167, at *9 (E.D.Cal. 2012); Davis v. Powell, __ F.Supp.2d __, 2012 WL 4754688, at *9 (S.D. Cal.

2012); Meredith v. Overley, 2012 WL 3764029, at *4 (E.D. Cal. 2012); Parra v. Hernandez, 2009 WL 3818376, at *8 (S.D. Cal. 2009.

Plaintiff is therefore unable to state a claim against Defendants Yates, Cate, Pineda or Athey.

D.  **FINDINGS AND RECOMMENDATIONS**

Based on the above, the Court finds that Plaintiff has failed to state a claim against any Defendant. Plaintiff has been afforded an opportunity to correct the deficiencies but has failed to do so. Accordingly, the Court recommends that this action BE DISMISSED WITHOUT LEAVE TO AMEND. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012) (internal quotation marks and citation omitted).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **November 13, 2013**          /s/ Dennis L. Beck
                                        UNITED STATES MAGISTRATE JUDGE